## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**

**ROBERT DOUGLAS HARTMANN,**
**a/k/a "Doug Hartmann,"**

    **Defendant.**

)
)
)
)
)
)
)
)
)
)

No.

**FILED**

JUL 1 2 2007

U. S. DISTRICT COURT
E. DISTRICT OF MO.

**4 : 0 7 CR 0 0 4 0 5 HEA**

### INDICTMENT

### COUNT I

1. At all relevant times, ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, resided at 1341 Crooked Stick, O'Fallon, Missouri.

2. At all relevant times, ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, was engaged in the purchasing, leasing, renovation, development and sales of real estate.

3. At all relevant times, ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, typically focused on existing properties that were in various stages of neglect or disrepair.

4. At all relevant times, ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, marketed the projects to associates, investors and others (Investors) as redevelopment projects for sales, rental properties or as condominium development projects.

5. At all relevant times, ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, operated and controlled legal entities, Douglas Hartmann Productions, L.L.C.,

and DHP Investments, (hereinafter referred to as DHP). DHP maintained offices at 3159 Fee Fee Road, Bridgeton, Missouri, and other locations in St. Louis, Missouri.

6. At all relevant times, ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, also operated or controlled Taylor Supplies, L.L.C., Taylor Design, L.L.C. (Taylor), Comet Management, L.L.C. (Comet), Bricktown Realty (Bricktown), and Job Site Recycling.

7. At all times relevant to this indictment, L.D.K, attorney at law, created these and other legal entities for ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, and further served at times, as the registered agent for the defendant's legal entities.

8. At all relevant times, Frontenac Bank, The Private Bank, Eagle Bank, The Business Bank, Gateway Bank, and Citizens Bank were financial institutions whose deposits were insured by the Federal Deposit Insurance Corporation (FDIC).

9. From in or about 2002, up until the date of this indictment, ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, devised a scheme and artifice to defraud financial institutions and investors and to obtain moneys, funds, assets or securities owned by or under the custody and control of the financial institutions by means of false or fraudulent, material pretenses, representations, or promises.

10. It was part of the scheme to defraud that:

a. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, formed DHP, Taylor, Comet, Bricktown, and Job Site Recycling to run his real estate business.

b. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, had bad credit and was unable to obtain bank loans or conventional financing for his real estate

2

business.

c. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, would borrow money from private lenders or hard money lenders. A hard money lender is a private individual or group of private individuals that make short term, high interest rate loans.

d. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, and others would recruit and encourage Investors to act as hard money lenders and make short term, high interest rate loans to the defendant or DHP so that he could continue this scheme.

e. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, would falsely and fraudulently represent to the hard money lenders that the funds lent would be secured by a specific property. The defendant would falsely and fraudulently assure the hard money lender that a deed of trust would be filed against the property and that the hard money lender would be typically assured of a first or second position as a lien holder on the property. In the alternative, if the defendant did not promise a high lienholder position, he would falsely and fraudulently promise the hard money lender that whatever lien holder's position they might have, there was sufficient equity in the property to secure this loan if it defaulted.

f. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, and others would falsely and fraudulently tell hard money lenders that the deeds of trusts and liens would be properly and timely recorded against the property to protect the hard money lender's interest. These deeds of trusts were subsequently recorded by Advanced Title, Capital Title, and/or other title companies or individuals. However, these liens or deeds of trusts typically were not filed with the Recorder of Deed's Office until there were hundreds of thousands of dollars in liens already recorded and filed against the property.

3

g. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, and others would recruit Investors to participate in real estate investments centering around the purchasing, renovation and sale or leasing of real estate.

h. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, would falsely and fraudulently direct the Investors to obtain a construction loan from an FDIC insured bank or financial institution.

i. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, would find a distressed property. Using the proceeds from a hard money lender, the defendant would purchase the distressed property. The defendant would then falsely and fraudulently sell that property at an inflated value to an Investor.

j. The proposed investment was based upon the defendant's false and fraudulent representations that he could restore the property at a cost of $30 to $40 per square foot and sell the completed property at $80 to $100 per square foot.

k. It was part of the scheme to defraud that ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, would falsely and fraudulently promise the Investors that he would conduct the renovations and split the proceeds from the sale of the renovated property with the Investor. The defendant further falsely and fraudulently promised the Investors that if he did not complete the renovation in the time period promised, the defendant would make the mortgage and loan payments for the Investor until the property was completed and sold.

l. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, would falsely and fraudulently draw out all or most of the construction loan funds while doing minimal work on the project. The defendant would falsely and fraudulently use the funds to

4

repay hard money lenders or Investors on other projects. The defendant would also use the construction funds designated for this agreed upon project for day-to-day DHP operations or other projects.

m. Had the banks been aware of the fact that the defendant would use the proceeds of the construction loans for expenditures other than the designated construction on the agreed upon property, they would not have made the loan.

n. It was part of the scheme to defraud that ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, would falsely and fraudulently provide false invoices to the lender, Investor or title company, purporting to reflect work done and materials purchased with the proceeds of the construction loans.

o. It was part of the scheme to defraud that ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, would hire non-union, Bosnian laborers at substandard wages to serve as his work crew. The defendant falsely and fraudulently continued to move them from job site to job site to create the appearance of ongoing restoration of a property when the banks would send out site inspectors or when they would attempt to verify the proper use of construction funds. The defendant would then remove the work crew once the bank inspector left the renovation site.

p. It was part of the scheme to defraud that ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein falsely and fraudulently drew out millions of dollars of FDIC insured bank or financial institution loans that were designated for specific construction projects. The defendant subsequently used the funds for other projects.

q. In creating and implementing this scheme and artifice to defraud, the defendant rarely

5

generated true profits for his investors through property sales. The defendant rarely engaged in any arms length real estate sales, typically reselling a property within the same circle of investors, always shifting the losses. The defendant further needed a constant source of fresh funds so he used the cash influx from new hard money lenders to pay off the old hard money lenders. The defendant falsely and fraudulently continued to induce new lenders and Investors to provide funds knowing that the funds would only go towards paying old Investors and would keep the scheme alive. In doing so, the defendant was involved in more than 250 properties.

r. In the Fall of 2005, the defendant's scheme collapsed causing hard money lenders, Investors, and purchasers of unfinished properties to lose millions of dollars. This further resulted in a series of foreclosures as well as vacant, abandoned and dilapidated properties and caused blight in South St. Louis neighborhoods.

## 2715 MICHIGAN

11. In or about January, 2004, DHP purchased the property known as 2715 Michigan, St. Louis, Missouri (Michigan) for approximately $44,000. It was funded by a hard money loan from Shawn Greeves. Michigan was originally a two-family residence and was in the process of conversion to a single-family dwelling. The Michigan property was described in the realtor's listing as "completely gutted, prepared shell down to the studs–ready for renovation."

12. DHP subsequently quit-claimed Michigan to Shawn Greeves, to secure Greeves' interest. Shawn Greeves subsequently sold or "flipped" Michigan to SJE Investments, LLC (SJE) for approximately $50,000. SJE is controlled and operated by Jeff Enderle (Enderle) of Chesterfield, Missouri.

13. Between January and February 3, 2004, SJE closed on the purchase of Michigan. SJE

6

obtained a mortgage for the purchase as well as a construction loan for the renovation of Michigan.

14. SJE obtained a $133,600 mortgage, of which approximately $88,000 was for construction, from Frontenac Bank, a financial institution, for the renovation of Michigan.

15. As part of the investment plan, DHP served as the contractor for the renovation of Michigan and submitted a construction budget of approximately $88,000. DHP falsely and fraudulently represented that the construction loan proceeds would be used to renovate Michigan and that when all the funds held by Frontenac Bank were disbursed, the property would be fully renovated.

16. Frontenac Bank agreed to loan the construction funds held by them based upon DHP's false and fraudulent representations that the work in the construction budget would actually be done. Frontenac Bank agreed to disburse the funds through Capital Disbursing Corporation.

17. Both SJE and Frontenac Bank agreed to the disbursements based upon DHP's false and fraudulent representations that the funds would be used pursuant to the construction budget and that the work would be completed as promised.

18. DHP made a series of draw demands on funds originating from or held by Frontenac Bank in excess of $70,000. DHP failed to use all of the funds for the renovations as promised or as needed. DHP fraudulently drew more than $10,000 in funds for demolition and hauling when in fact the work had been done by a prior owner. When DHP completed the drawing of construction funds, minimal work had been done.

19. Had Frontenac Bank been aware of the fact that the construction funds would not have been used for the stated purpose or that DHP would not complete the property renovation, they would not have approved the construction loans.

7

20. On or about February 13, 2004, within the Eastern District of Missouri,

## ROBERT DOUGLAS HARTMANN,
### a/k/a Doug Hartmann,

the defendant herein, executed and attempted to execute the above described scheme and artifice

to defraud and to obtain the moneys, funds, credits, assets, securities and other property, owned

by or under the custody and control of Frontenac Bank, a financial institution, by means of

material false and fraudulent pretenses, representations and promises in that the defendant

induced Frontenac Bank into loaning funds which were released through Capital Title, to be used

for demolition and hauling when in fact, DHP did not do this work. DHP failed to complete the

renovation of Michigan under the ownership of SJE.

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT II

The Grand Jury further charges that:

1. The allegations of Paragraphs 1 - 19 of Count I of this indictment are hereby realleged
and incorporated by reference as if fully set forth herein.

2. On or about February 8, 2005, at the suggestion and direction of ROBERT DOUGLAS
HARTMANN, a/k/a Doug Hartmann, the defendant herein, SJE sold Michigan to TODI
Investments, LLC (TODI) for approximately $150,000.

3. On or about March 25, 2005, at the direction of ROBERT DOUGLAS HARTMANN,
a/k/a Doug Hartmann, the defendant herein, TODI sold Michigan to Ryan Wuebbeling
(Wuebbeling) for $160,000. Tom Huling, the operator of TODI was unaware that the defendant
caused these transactions. Wuebbeling obtained a mortgage for the purchase of Michigan as well
as a $50,000 construction loan for the renovation of Michigan. As part of the investment plan,

8

DHP served as the contractor for renovation, and prepared the construction budget.

4. Wuebbeling obtained the mortgage and construction loan from The Business Bank, a financial institution. The Business Bank agreed to grant the mortgage and make the construction loan based upon DHP's false and fraudulent representation that the funds would be used for renovation and that the work would actually be done.

5. DHP falsely and fraudulently drew funds in the care and custody of The Business Bank for work it never performed. Had The Business Bank been aware that DHP would draw out construction funds and not use them for renovation of Michigan as promised, The Business Bank would not have loaned the funds.

6. DHP failed to renovate Michigan under the ownership of Wuebbeling.

7. Between April 1, 2005 and April 5, 2005, within the Eastern District of Missouri,

### ROBERT DOUGLAS HARTMANN
### a/k/a Doug Hartmann,

the defendant herein, knowingly executed and attempted to execute the above described scheme and artifice to defraud and to obtain the moneys, funds, credits, assets, securities and other property, owned by or under the custody and control of The Business Bank, a financial institution, by means of material false and fraudulent pretenses, representations and promises in that the defendant drew funds in the care and custody of The Business Bank for work never done.

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT III

The Grand Jury further charges that:

1. The allegations of Paragraphs 1 - 10 of Count I and Paragraphs 1-6 of Count II of this indictment are hereby realleged and incorporated by reference as if fully set forth herein.

9

2. On or about May 18, 2005, within the Eastern District of Missouri,

## ROBERT DOUGLAS HARTMANN,
### a/k/a Doug Hartmann,

the defendant herein, knowingly executed and attempted to execute the above described scheme

and artifice to defraud and to obtain the moneys, funds, credits, assets, securities and other

property, owned by or under the custody and control of The Business Bank, a financial

institution, by means of material false and fraudulent pretenses, representations and promises in

that he falsely and fraudulently caused The Business Bank to issue check number 015568, in the

amount of $3,500, made payable to DHP Investments, LLC, purportedly to be used for flooring

at Michigan. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, failed to use these

funds for flooring at Michigan and in fact turned this check over to Jon E. Fuhrer as repayment

on a hard money loan.

In violation of Title 18, United States Code, Sections 1344 and 2.

## 3556 NEBRASKA

## COUNT IV

The Grand Jury further charges that:

1. The allegations of Paragraphs 1 - 10 of Count I of this indictment are hereby realleged

and incorporated by reference as if fully set forth herein.

2. On or about January 16, 2004, within the Eastern District of Missouri, DHP purchased

the property described as 3556 Nebraska, St. Louis, Missouri (Nebraska) for approximately

$50,000.

3. On or about February 4, 2004, DHP sold Nebraska for approximately $50,000 to

10

Richard and Johnita Schroeder (Schroeder). Schroeder obtained a $47,820 mortgage and a $126,000 construction loan for the renovation of Nebraska from Citizens Bank, a financial institution.

4. As part of the investment plan, DHP served as the contractor and prepared the construction budget on Nebraska. Citizens Bank agreed to fund the mortgage and construction and renovation loans based upon DHP's representations that it would actually use the disbursed construction funds on the construction and renovation of Nebraska.

5. DHP falsely and fraudulently drew out the majority of the funds in the construction budget originating from Citizens Bank and failed to perform or complete the work on Nebraska.

6. Had Citizens Bank been aware that DHP would draw out the construction funds without doing the work or completing Nebraska, Citizens Bank would not have disbursed the funds in their care and custody.

7. The renovation of Nebraska was never completed under the ownership of the Schroeders.

8. In or about June, 2004, in the Eastern District of Missouri,

### ROBERT DOUGLAS HARTMANN,
### a/k/a Doug Hartmann,

the defendant herein, knowingly executed and attempted to execute the above described scheme and artifice to defraud and to obtain the moneys, funds, credits, assets, securities and other property, owned by or under the custody and control of Citizens Bank, a financial institution, by means of material false and fraudulent pretenses, representations and promises in that he caused Citizens Bank to disburse funds for the purpose of obtaining materials and labor, when in fact,

11

the materials were not obtained and the labor was never done.

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT V

The Grand Jury further charges that:

1. The allegations of Paragraphs 1 - 10 of Count I and Paragraphs 1 - 7 of Count IV of this indictment are hereby realleged and incorporated by reference as if fully set forth herein.

2. On or about December 17, 2004, ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, falsely and fraudulently signed a Final Affidavit and Agreement representing that DHP had completed all work per agreement on Nebraska, when in fact, it was not.

3. On or about December 17, 2004, ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, falsely and fraudulently caused Schroeder to sign this affidavit signifying that the construction was completed on Nebraska, when in fact, it was not.

4. On or about December 29, 2004, at the direction of ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, Schroeder sold Nebraska to Gardenview Properties, LLC (Gardenview), for approximately $207,000. Gardenview was owned by Thomas Huling (Huling) of Wildwood, Missouri. Between April and May, 2005, Gardenview sold Nebraska to David B. and Janice Whitney (Whitney), the sister and brother-in-law of Huling, for $100,000.

5. On or about March 1, 2005, Nebraska was appraised "as is" for $100,000.

6. In between April and May, 2005, at the direction of ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, Whitney obtained a $289,000

12

mortgage for Nebraska from Gateway Bank, a financial institution. This included a construction loan.

7. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, agreed that DHP would serve as the contractor for the renovation of Nebraska and prepared a construction budget of $170,000.

8. Gateway Bank agreed to loan and disburse construction funds for Nebraska based upon the false and fraudulent representations of ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, that the construction funds would actually be used for the renovation of Nebraska.

9. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, falsely and fraudulently drew out approximately $146,000 in construction funds and did minimal work, failing to complete the project.

10. On or about November 18, 2005, a Gateway Bank property inspection was performed and the property appeared to be abandoned. The inspector noted "no work has been done on this project other than rear of building has been bricked up along with side entrance."

11. On or about April 27, 2005, with the Eastern District of Missouri and elsewhere,

## ROBERT DOUGLAS HARTMANN,
## a/k/a Doug Hartmann,

the defendant herein, knowingly executed and attempted to execute the above described scheme and artifice to defraud and to obtain moneys, funds, credits, assets, securities and other property, owned by or under the custody and control of Gateway Bank, a financial institution, by means of material false and fraudulent pretenses, representations and promises in that the defendant herein

13

falsely and fraudulently induced Gateway Bank, a financial institution, to loan or disburse $63,000 in funds under the care and control of Gateway Bank to DHP for plans, permits, framing, plumbing, electric and HVAC work, when in fact, very little of the work was actually done on Nebraska.

In violation of Title 18, United States Code, Sections 1344 and 2.

### 3201 - 3207 LAFAYETTE

### COUNT VI

The Grand Jury further charges that:

1. The allegations of Paragraphs 1 - 10 of Count I of this indictment are hereby re-alleged and incorporated by reference as if fully set forth herein.

2. In October of 2003, Enderle met ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein. The defendant convinced Enderle to make hard money loans to DHP. Between October, 2003 and October, 2007, Enderle made approximately 28 hard money loans, totaling approximately $1,450,500 to the defendant and DHP. The defendant repaid approximately $20,000 of these loans.

3. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, induced Enderle to make these hard money loans by falsely and fraudulently telling Enderle that all of these loans would be secured by property. The defendant further falsely and fraudulently advised Enderle that he would always be secured by a deed of trust filed in the first or second lien position with the recorder of deeds.

4. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, falsely and fraudulently advised Enderle that "You can sleep at night knowing that the loans are

14

secure. There is no better security than being in first position with equity". The defendant made this series of false and fraudulent representations when he knew in fact that most of these properties would typically be secured by a lesser lien position or that no deeds of trusts had actually been filed, causing Enderle's loans to be at risk.

5. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein began to recruit Enderle to invest in specific properties. As a result, Enderle purchased 13 DHP properties, including 3600 Texas, 3301 Park, 3201-07 Lafayette, 1959-63 Arsenal, 3600 S. Jefferson, 2825-2827 Magnolia, 2907 Michigan, 1915-1917 Lynch, 2838 McNair, 3300 Missouri, 3140 California, 6101 Minnesota and 2100 Chippewa. The properties were all located in St. Louis, Missouri.

6. On or about December 15, 2003, DHP purchased 3201-3207 Lafayette, St. Louis, Missouri (Lafayette) for $115,913. On February 20, 2004, DHP sold Lafayette to Enderle for $199,000. At the direction of ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, Enderle was directed to Frontenac Bank, a financial institution, to obtain a $701,426 loan for the purchase and renovation of Lafayette. The defendant prepared a construction budget in the amount of $501,521 for the renovation of Lafayette. As part of the investment plan, DHP served as the contractor for the construction on Lafayette. The defendant represented to Enderle that once he had completed construction, that Lafayette would be converted to eight separate condominiums and worth approximately $1,500,000.

7. Frontenac Bank agreed to fund the mortgage and construction loan based upon the defendant's false and fraudulent representations that DHP would actually complete the construction work in an appropriate fashion and that DHP would actually use the construction

15

funds for the renovation of Lafayette.

8. DHP drew out approximately $458,141 in construction funds from Frontenac Bank and did not complete the renovation of Lafayette, falsely and fraudulently using the construction funds for other matters. Much of the work actually done by DHP was shoddy and included the hanging of moldy drywall. Had Frontenac Bank been aware that DHP would have drawn out the funds without doing the work, they would not have approved the loan.

9. Enderle confronted ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein , about the fact that the defendant had drawn out construction funds for work not done, particularly a draw for deposits for windows, when in fact no new windows were installed. The defendant advised Enderle that he had in fact used the construction funds to pay hard money lenders.

10. Between February 20, 2004 and December 2005, in the Eastern District of Missouri and elsewhere,

### ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann,

the defendant herein, the defendant herein, knowingly executed and attempted to execute the above described scheme and artifice to defraud and to obtain moneys, funds, credits, assets, securities and other property, owned by or under the custody and control of Frontenac Bank, a financial institution, by means of material false and fraudulent pretenses, representations and promises in that the defendant herein falsely and fraudulently induced Frontenac Bank, a financial institution, to lend funds for the purchase and renovation of Lafayette when in fact the defendant did not use all of the construction funds for the renovation of Lafayette.

In violation of Title 18 United States Code, Sections 1344 and 2.

16

## 12 PROPERTY HULING SALE

### COUNT VII

The Grand Jury further charges that:

1. The allegations of Paragraphs 1 - 10 of Count I of this indictment are hereby realleged and incorporated by reference as if fully set forth herein.

2. On or about April 2, 2005, ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, approached Jim Smith about purchasing a forty-three property package from Smith. The defendant stated that the purchase would be for cash without any financing or contingencies.

3. On or about August, 2005, ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, purchased forty-three properties from Jim Smith for approximately $1,575,000. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, did not have the funds to pay for purchase of the forty-three property package and in fact closed on the purchase on or about August 1, 2005, without sufficient funds to pay for the properties. The defendant assured Jim Smith that he would have the funding in "days."

4. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, sought financing from hard money lenders to fund a portion of this purchase. These hard money lenders included Preferred Mortgage Services, LLC (Preferred), a group of private lenders, Tom Howard and Karl Hansmeier.

5. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, sold a twelve property package derived from the forty-three property package to Tom Huling for $720,000. These properties included 6331 Hancock, 6511 Plymouth, 6616 Donald, 3974 Lada, 2126 Erick, 5560 Winchelsea, 346 Plaza, 5741 Helen, 10036 Monarch, 610 Lincoln, 206 Market

and 723 N. 7th Street. All of these properties were located in the metropolitan St. Louis, Missouri area, St. Charles County, Lincoln County, and Franklin County, Missouri.

6. At the direction of ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, Huling sought mortgages on this twelve property package from the Private Bank, a financial institution. Huling sought these mortgages and Private Bank approved and funded these mortgages under the defendant's representation that there were no encumbrances on these properties and that Private Bank would have the first lien position.

7. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, falsely and fraudulently concealed from The Private Bank the fact that Preferred and Howard had loaned the financing for the 12 properties sold to Huling. The defendant failed to disclose these loans on the HUD-1 Settlement Statements and filed false Seller Affidavits. These false Seller Affidavits signed by Robert Douglas Hartmann, the defendant herein, included language that "There are no home improvement loans, home equity lines of credit, or other home loans not listed on my closing statement...".

8. As a result, ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, falsely and fraudulently failed to pay off Preferred out of the proceeds of the sale of the eleven-property package. This resulted in Preferred and Howard having a superior lien to The Private Bank. The defendant paid off Howard on some but not all of his loans.

9. Had The Private Bank been aware that the defendant had prior non-disclosed financing or the fact that it would be in a subordinate lien position, The Private Bank would not have funded the loan or disbursed the funds.

10. On or about August 1, 2004, in the Eastern District of Missouri,

**ROBERT DOUGLAS HARTMANN,**
**a/k/a Doug Hartmann,**

18

the defendant herein, knowingly executed and attempted to execute the above described scheme

and artifice to defraud and to obtain the moneys, funds, credits, assets, securities and other

property, owned by or under the custody and control of The Private Bank, a financial institution,

by means of material false and fraudulent pretenses, representations and promises in that he

falsely and fraudulently induced The Private Bank to disburse approximately $736,000 from

funds in its care and custody to Huling for the purchase of these twelve properties.

In violation of Title 18, United States Code, Sections 1344 and 2.

## 1006 JEFFERSON

## COUNT VIII

The Grand Jury further charges that:

1. The allegations of paragraphs 1-10 of Count I of this indictment are hereby realleged

and incorporated by reference as if fully set forth herein.

2. Between 2002 and to on or about the date of this indictment, within the Eastern District

of Missouri,

## ROBERT DOUGLAS HARTMANN,
## a/k/a Doug Hartmann,

the defendant herein, devised and intended to devise a scheme and artifice to defraud, or for

obtaining money or property by means of material false or fraudulent pretenses, representations,

or promises.

3. It was part of the scheme to defraud that:

a. Norma K. Allen (Allen) owned and resided at 1006 Jefferson Street, St. Charles,

Missouri (Jefferson). In late 2004, Allen began to experience financial difficulties. Jefferson was

worth approximately $100,000 and Allen owed approximately $56,000 to the mortgage holders.

Allen had in excess of $40,000 in equity in Jefferson. Due to Allen's financial situation she was

19

unable to refinance her home and was at risk for foreclosure.

b. Allen was referred to ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, to discuss her mortgage situation. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, suggested to Allen that he could purchase Jefferson from her and she could pay him rent, with the intent that Allen would again own Jefferson at the end of a two year rent-to own period.

c. The Jefferson closing took place in February 2005, at Title Searches. During the closing, Allen was advised that pay off figures were not ready and she did not receive any payment or copies of any closing papers the day of her closing of the sale of Jefferson. To fund the Jefferson purchase, DHP obtained an unsecured hard money loan from Jon Fuhrer.

d. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, in the course of purchasing Jefferson, falsely and fraudulently diverted, stripped and converted for his own use, approximately $44,000 of Allen's equity in the residence. This was done without the knowledge and consent of Allen. When Allen complained to the defendant, he remitted a small amount of funds to her.

e. Beginning in March of 2005, Allen began to mail DHP a monthly rent payment of $1108. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, told Allen that he was going to use the rent to make the Jefferson mortgage payment.

f. Allen was induced by the defendant to make regular rent payments to DHP and would mail them to DHP. DHP failed to make the monthly mortgage payments as per ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, agreement with Allen. The defendant also failed to tell Allen that he was no longer making mortgage payments on Jefferson. As a result Jefferson went to foreclosure and Allen was evicted.

20

4. On or about May 2005, in the Eastern District of Missouri and elsewhere,

## ROBERT DOUGLAS HARTMANN,
### a/k/a Doug Hartmann,

the defendant herein, for the purpose of executing this scheme and artifice to defraud, and in

attempting to do so, to obtain money and property by means of material false and fraudulent

pretenses, representations and promises, did knowingly and willfully cause to be deposited in the

U.S. mail, a check to be sent and delivered from Allen, St. Charles, Missouri to DHP, St. Louis

Missouri.

In violation 18 United States Code, Sections 1341 and 2.

## SELF DIRECTED IRA

## COUNT IX

The Grand Jury further charges that:

1. The allegations of paragraphs 1-10 of Count I of this indictment are hereby realleged
and incorporated by reference as if fully set forth herein.

2. Between 2002 and to on or about the date of this indictment, within the Eastern District
of Missouri,

## ROBERT DOUGLAS HARTMANN,
### a/k/a Doug Hartmann,

the defendant herein, devised and intended to devise a scheme and artifice to defraud, or for

obtaining money or property by means of material false or fraudulent pretenses, representations,

or promises.

3. It was part of the scheme to defraud that:

a. In October, 2004, ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the

defendant herein, offered Gary Detmer (Detmer) the opportunity to invest with DHP by

21

purchasing properties for renovation. Detmer purchased 4008 Castleman, 2828 Ohio, 3225 Jefferson, 3720 California, 2267 Indiana, 2248 S. Jefferson and 4543 Jefferson. Detmer purchased these properties individually or with partners. Some of these properties were placed in the names of Bennington Commons, LLC, which was created by LDK, Attorney at Law. The defendant told Detmer that he would not have to put any money down and that the defendant would take care of the monthly payments during construction so that it was a "no lose investment". All of these properties were renovations in which ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein induced Detmer to obtain a series of bank loans for the purchase and renovation of these properties. The defendant advised Detmer that these investments were "better than stock" because there would be equity in the properties, "even in a down year".

b. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, provided Detmer and the banks with construction budgets for these properties and served as the general contractor on the renovations. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, falsely and fraudulently induced the banks to provide the funds for the renovations based upon his representations that the funds would be disbursed for the construction and that the funds would actually be used as per the construction draws.

c. DHP failed to use the construction draws properly and failed to complete the construction and the renovations even though he drew most of the construction funds. These properties are foreclosing and Detmer now owes in excess of $1,700,000 to the banks on the loans.

d. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, and others suggested that Detmer transfer his IRA funds to a DHP investment. Both LK, Attorney at

22

Law and the defendant advised Detmer that he could transfer his IRA funds to a self directed IRA through Equity Trust Company (Equity Trust), 225 Burns Road, P.O. Box 1529, Elyria, Ohio, 44036. A self directed IRA allowed Detmer to select a specific non-traditional investment.

e. On or about November 23, 2004, based upon the direction of the defendant and others, Detmer applied for an Equity Trust account and transferred in excess of $30,000 in IRA funds from his Edward D. Jones account to Equity Trust. Edward D. Jones, Maryland Heights, Missouri, subsequently sent a check in the amount of $32,853.13 from Detmer's IRA account to Equity Trust.

f. On or about March 3, 2005, Equity Trust remitted a check to DHP Investments LLC. Equity Trust mailed a $30,000 check to the L.K. Law Firm.

g. On or about March 3, 2005, Equity Trust sent a notice of this transaction via the U.S. mail to Detmer in St. Louis, Missouri.

h. With the assistance of the defendant and LK, Attorney at Law, these funds were invested in the form of a loan to DHP and were to be secured by a deed of trust on 4101 Magnolia.

i. ROBERT DOUGLAS HARTMANN, a/k/a Doug Hartmann, the defendant herein, falsely and fraudulently told Detmer that his IRA investment would be safe and the property on Magnolia was secure as Detmer would be in the first lien position, when in fact the defendant knew that this wasn't so. DHP failed to make the mortgage payments on Magnolia and the banks which had funded the mortgage on Magnolia foreclosed on the property causing Detmer to lose all of his IRA funds. Detmer would not have invested his IRA funds with DHP had he been aware that his investment was not secured by a first position lien on Magnolia.

23

4. On or about November 23, 2004, in the Eastern District of Missouri and elsewhere,

**ROBERT DOUGLAS HARTMANN,**
**a/k/a Doug Hartmann,**

the defendant herein, for the purpose of executing this scheme and artifice to defraud, and in

attempting to do so, to obtain money and property by means of material false and fraudulent

pretenses, representations and promises, did knowingly and willfully cause to be delivered in the

U.S. mail a letter, to be sent and delivered from Equity Trust, Elyria, Ohio, to Gary Detmer, St.

Louis, Missouri.

In violation of Title 18 United States Code Sections 1341 and 2.

A TRUE BILL.


_____
FOREPERSON

CATHERINE L. HANAWAY
United States Attorney


_____
HOWARD J. MARCUS   #16980
Assistant United States Attorney

24