UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,      )
                               )
               Plaintiff,      )
                               )
     v.                        ) No. 4:07-CR-405-HEA
                               )
ROBERT DOUGLAS HARTMANN,       )
                               )
               Defendant.      )


CHANGE OF PLEA


BEFORE THE HONORABLE HENRY E. AUTREY
UNITED STATES DISTRICT JUDGE


APRIL 2, 2009

APPEARANCES:

For Plaintiff:        James E. Crowe, Jr., AUSA
                      Reginald L. Harris, AUSA
                      **OFFICE OF U.S. ATTORNEY**
                      111 South Tenth Street, 20th Floor
                      St. Louis, MO  63102


For Defendant:        Burton H. Shostak, Esq.
                      Grant J. Shostak, Esq.
                      **SHOSTAK AND SHOSTAK**
                      8015 Forsyth Boulevard
                      St. Louis, MO  63105


REPORTED BY:          *Gayle D. Madden, CSR, RDR, CRR*
                      *Official Court Reporter*
                      *United States District Court*
                      *111 South Tenth Street, Third Floor*
                      *St. Louis, MO  63102*
                      *(314) 244-7987*

1      (Proceedings started at 1:11 p.m.)

2      (The following proceedings were held in open court and

3  with the Defendant present.)

4          THE COURT:  This is the matter of United States of

5  America versus Robert Douglas Hartmann, Case

6  No. 4:07-CR-405-HEA.  The matter is now before the Court on a

7  Notice of Change of Plea, and the parties have, therefore,

8  provided to the Court a document entitled Plea Agreement,

9  Guidelines Recommendations, and Stipulations, which consists

10  of 17 pages.

11          Let the record further reflect that the Defendant is

12  now present in court with counsel, Mr. Shostak, and the

13  Government is present through Mr. Crowe.

14          Mr. Shostak, on behalf of the Defendant, are you

15  ready to proceed?

16          MR. BURTON SHOSTAK:  We are, Your Honor.

17          THE COURT:  Mr. Crowe?

18          MR. CROWE:  Yes, Your Honor.

19          THE COURT:  Will you swear in the Defendant?

20      (Defendant sworn by the clerk.)

21                            EXAMINATION

22  BY THE COURT:

23  Q    Would you state your full name for the record, please?

24  A    Robert Douglas Hartmann.

25  Q    And now, Mr. Hartmann, did you hear the statement that I

1  just made?

2  A    Yes, sir.

3  Q    And is that a true and correct statement of why we are in

4  court today?

5  A    Yes, sir.

6  Q    All right.  Do you understand, though, that before I can

7  accept your plea of guilty there are a number of questions

8  that I have to ask you to be sure your plea is a valid plea,

9  so in that regard if I say something and you don't understand

10 me, let me know and I'll rephrase it.  If I say something and

11 you don't hear me, let me know that as well and I'll speak

12 louder.  Okay?

13 A    Yes, sir.

14 Q    Also, if at any time you need or want to talk with your

15 lawyer about anything related to this matter, let me know that

16 and I'll give you that opportunity as well.

17 A    Yes, sir.

18 Q    All right.  Any questions about any of that?

19 A    No, sir.

20 Q    All right.  Also, keep in mind that you've taken an oath

21 to answer all questions truthfully, which means your failure

22 to do so could cause the Government to come back against you

23 with a new indictment for perjury.  All right?

24 A    Okay.

25 Q    Any questions about that?

1  A    No, sir.

2  Q    All right.  How old are you, Mr. Hartmann?

3  A    Forty-six.

4  Q    How far in school have you gone?

5  A    Four years of college.

6  Q    Did you get your degree?

7  A    No, sir.

8  Q    All right.  What were you majoring in?

9  A    Marketing.

10  Q    Do you have any difficulty hearing?

11  A    No, sir.

12  Q    Do you have any difficulty speaking or understanding

13  English?

14  A    No, sir.

15  Q    Did you use or take any kind of medication before coming

16  to court today that might keep you from understanding what's

17  going on in court today?

18  A    No, sir.

19  Q    Have you used any alcohol or drugs before coming to court

20  today?

21  A    No, sir.

22  Q    Have you used any alcohol or drugs within the last 36

23  hours?

24  A    No, sir.

25  Q    Have you ever been treated for or diagnosed as having any

1  type of mental illness or mental disease?

2  A    No, sir.

3  Q    Have you ever used or taken any type of medication that

4  might typically be used for the treatment of mental illness or

5  mental disease?

6  A    No, sir.

7  Q    All right.  How are you feeling today, Mr. Hartmann?

8  A    Fine.

9  Q    And tell me in your own words why you have come to court

10  today with your lawyer.

11  A    I guess to enter into an agreement that has been mapped

12  out by Mr. Crowe and Mr. Shostak.

13  Q    Okay.  By entering into an agreement, what specifically

14  do you mean by that?  Does that mean you want to plead guilty

15  to the charges?

16  A    Pleading guilty to Counts III and VIII, yes, sir.

17        THE COURT:  All right.  Do you know of any reason,

18  Mr. Shostak, why the Court should not conclude that your

19  client is competent to proceed at this time?

20        MR. BURTON SHOSTAK:  None whatsoever.

21        THE COURT:  Mr. Crowe?

22        MR. CROWE:  No, Your Honor.

23        THE COURT:  Let the record then reflect that upon

24  examination of the Defendant and upon inquiry of counsel, the

25  Court concludes that the Defendant is competent to proceed at

1    this time.

2    Q    (By The Court) Now, Mr. Hartmann, have you had enough

3    time to review and discuss your case with your lawyer?

4    A    Yes, sir.

5    Q    And are you satisfied with the advice that he has given

6    you?

7    A    Yes, sir.

8    Q    Has he answered all of your questions fully, completely,

9    and to your satisfaction?

10   A    Yes, sir.

11   Q    Is there anything that you wanted to know or needed to

12   know regarding your case that you might still be confused

13   about or still may not understand even though you have had

14   enough time to go over the case with your lawyer?

15   A    No, sir.

16   Q    Were there any witnesses that you wanted him to check out

17   or that he should have checked out that he didn't check out?

18   A    No, sir.

19   Q    Was there any investigation that you wanted him to do or

20   that he should have done but he didn't do?

21   A    No, sir.

22   Q    Was there any information that you wanted him to get from

23   the Government regarding your case or that he should have

24   gotten from the Government regarding your case that he didn't

25   get?

1   A    No, sir.

2   Q    Was there anything at all that you wanted your lawyer to

3   do for you in this case that he failed to do or refused to do

4   in your behalf?

5   A    No, sir.

6   Q    Are you fully satisfied with the work that your lawyer

7   has done for you?

8   A    Yes, sir.

9   Q    Was -- do you have any complaints against him in any way?

10  A    No, sir.

11  Q    And do you understand that when you plead guilty here

12  today it means that you're giving up your right to a trial by

13  a jury?

14  A    Yes, sir.

15  Q    And do you understand that the Constitution and laws of

16  this nation guarantees you the right to have your case decided

17  by a jury of 12 impartial citizens?

18  A    Yes, sir.

19  Q    And have you discussed that with your attorney?

20  A    Yes, sir.

21  Q    And based upon that discussion, have you now concluded

22  that, in fact, what you want to do is give up your right to a

23  trial by jury and plead guilty in this case?

24  A    Yes, sir.

25  Q    Do you understand, though, that if you did go to trial

1  you would be presumed innocent and it would be the obligation

2  of the Government to prove you guilty beyond a reasonable

3  doubt by competent evidence?

4  A    Yes, sir.

5  Q    Do you further understand that at no time would you be

6  required to present any type of evidence to prove yourself

7  innocent?

8  A    Yes, sir.

9  Q    Do you also understand that if you were to go to trial

10  you would have the right to confront any and all witnesses

11  that the Government might have against you in the case?

12  A    Yes, sir.

13  Q    And, furthermore, you'd be able to cross-examine those

14  witnesses as they testified in open court, under oath, and in

15  front of a jury?

16  A    Yes, sir.

17  Q    And do you, likewise, understand that you would be able

18  to object to any and all evidence that the Government might

19  attempt to introduce against you at trial?

20  A    Yes, sir.

21  Q    Do you also understand, Mr. Hartmann, that you would have

22  the right to testify or not testify?

23  A    Yes, sir.

24  Q    And do you understand that if you decided that you did

25  not want to testify in the case the fact that you did not

1   testify could not be used against you in any way?

2   A    Yes, sir.

3   Q    Do you further understand that if you did want to present

4   evidence in your own behalf you could but there's no

5   requirement that you present any kind of evidence?

6   A    Yes, sir.

7   Q    Do you have any questions about any of these things?

8   A    No, sir.

9   Q    Do you also understand that if you proceed with your plea

10  of guilty here today and I accept your plea of guilty I will

11  enter a judgment finding you guilty beyond a reasonable doubt

12  and I will impose a sentence on some future date?

13  A    Yes, sir.

14  Q    Do you understand that whatever sentence I impose is

15  entirely up to me?

16  A    Yes, sir.

17  Q    And do you understand that that is true even though you

18  might have some agreement between yourself and the Government

19  on things that relate to sentencing?

20  A    Yes, sir.

21  Q    Knowing all of that, do you still want to go ahead with

22  your plea of guilty here today?

23  A    Yes, sir.

24  Q    All right.  Do you also understand, Mr. Hartmann, that in

25  pleading guilty here today it means that you're giving up your

1  right to not incriminate yourself under the Fifth Amendment of

2  the Constitution because you will have to admit the facts that

3  establish a basis for the crime as well as the admit the crime

4  itself?

5  A    Yes, sir.

6  Q    And is that what you want to do here today?

7  A    Yes, sir.

8  Q    All right.  Very well.  Have you had the opportunity to

9  then review the indictment with your attorney?

10  A    Yes, sir.

11  Q    Are you satisfied then that you understand everything in

12  the indictment?

13  A    Yes, sir.

14  Q    Do you have any questions about anything in the

15  indictment?

16  A    No, sir.

17  Q    Are you also aware of the range of punishment that

18  applies to the charges in the indictment?

19  A    Yes, sir.

20  Q    And have you talked that over with your lawyer as well?

21  A    Yes, sir.

22         THE COURT:  For the record, Mr. Crowe, would you tell

23  us what the range of punishment is for Counts III and VIII?

24         MR. CROWE:  Your Honor, the parties are going to

25  present or are presenting a Plea Agreement to you under

1  Rule 11(c)(1)(C), which we'll get into, I'm sure, in a minute,

2  but the maximum punishments for the specific offenses are:

3        With respect to Count III, which is bank fraud,

4  charged under 18 U.S. Code § 1344, the maximum punishment is

5  30 years in prison, up to a million dollars in fine, a

6  five-year supervised release, and/or possibly both a fine and

7  imprisonment.

8        For Count VIII, which is the mail fraud charge, under

9  18 U.S. Code § 1341, the maximum punishment is 20 years in

10  prison, a $250,000 fine, and three years supervised release.

11  Q    (By The Court) Did you hear what Mr. Crowe just said

12  regarding Counts III and VIII?

13  A    Yes, sir.

14  Q    And is there anything that he just said regarding the

15  range of punishment as to those counts that surprised you in

16  any way?

17  A    No, sir.

18  Q    Very well.  Is anybody forcing you to plead guilty here

19  today, Mr. Hartmann?

20  A    No, sir.

21  Q    Has anybody promised you anything to get you to plead

22  guilty?

23  A    No, sir.

24  Q    Has anyone threatened you in any way to get you to plead

25  guilty?

1  A    No, sir.

2  Q    Has anyone made any threats against any close friends or

3  family members in order to get you to plead guilty here today?

4  A    No, sir.

5  Q    Are you pleading guilty then voluntarily and of your own

6  free will because that's what you want to do?

7  A    Yes, sir.

8  Q    All right.  In relation to your plea of guilty, I made

9  reference to your Plea Agreement as we started, and the last

10  page of that document shows the printed name of Robert D.

11  Hartmann with a signature above it.  Is that your signature?

12  A    Yes, it is.

13  Q    And before you signed the document, did you review it in

14  its entirety with your attorney?

15  A    Yes, sir.

16  Q    And as a result of that review, are you satisfied that

17  you understand everything in the Plea Agreement?

18  A    Yes, sir.

19  Q    Do you have any questions about anything in the Plea

20  Agreement?

21  A    No, sir.

22        THE COURT:  All right.  For the record, Mr. Crowe, to

23  ensure that we all have the same understanding, would you tell

24  us, please, what the substance of the Plea Agreement is?

25        MR. CROWE:  Your Honor, the parties have agreed that

1  pursuant to Mr. Hartmann's guilty plea to Counts III and VIII

2  in the indictment, the Government would move at the time of

3  sentencing to dismiss the remaining counts in the nine-count

4  indictment.

5       Also, as part of the Plea Agreement, the parties are

6  submitting this agreement under Rule 11(c)(1)(C) of the

7  Federal Rules of Criminal Procedure, and the parties are

8  recommending to the Court that a sentence of not more than 24

9  months in prison shall be imposed in the case, and the

10  parties' agreement as submitted to you deals only with the

11  prison aspect of the sentence to be imposed.

12       The parties are in agreement further that no further

13  federal prosecution would be brought in this district relative

14  to the Defendant's activities up to the date of the indictment

15  herein in the business of obtaining loans from investors and

16  financial institutions for use in real estate transactions,

17  including renovations and rehabilitations, and inasmuch as

18  it's an 11(c)(1)(C) offer, Your Honor, this is one of those

19  situations where if the Court ultimately does not accept the

20  Plea Agreement of the parties that the Defendant would, under

21  that rule, be entitled to withdraw his guilty plea.

22  Q    (By The Court) All right.  Did you hear everything that

23  Mr. Crowe just said?

24  A    Yes, sir.

25  Q    And is there anything that Mr. Crowe just said that

1  surprised you in any way?

2  A    No, sir.

3  Q    Very well.  Other than the specific reference to

4  11(c)(1)(C) as stated in the Plea Agreement, has anyone

5  otherwise promised you or predicted to you exactly what your

6  sentence is going to be?

7  A    No, sir.

8         THE COURT:  All right.  Would you then tell us,

9  Mr. Crowe, what the evidence would have been if the matter had

10  gone to trial that would establish a factual basis for the

11  charge, the relevant conduct of the Defendant, and a basis

12  upon which one might conclude that the Defendant was guilty

13  beyond a reasonable doubt?

14         MR. CROWE:  Your Honor, the parties -- in the plea

15  stipulation document that you referred to, that has been

16  signed by all the parties, at paragraph four, starting on page

17  eight of that document, there's a factual statement that has

18  been agreed to by the parties.  Essentially, in summary form,

19  this Defendant had been in the business of purchasing,

20  leasing, renovating, and developing real estate -- many of the

21  properties in the St. Louis area, many residential properties.

22  He operated under DHP Investments and some other names, so the

23  name or the acronym DHP was -- is used widely in the business.

24         Count III deals with a scheme involving to defraud a

25  bank and investors, focusing on, in particular, Count III, The

1  Private Bank, a situation involving a piece of property at

2  2715 Michigan in the city of St. Louis, not far from Tower

3  Grove Park.  The Private Bank loaned $50,000 as part of a loan

4  package, 50,000 being for construction for a rehab.  In fact,

5  some construction money had already been lent on that property

6  by Frontenac Bank.  The long and short of it is after the

7  proceeds were used up or most of the proceeds, the

8  construction proceeds, were used up from The Private Bank in

9  the year 2005, the property was not substantially

10 rehabilitated.  The particular count deals with a $3,500

11 disbursement of the construction loan funds that was vouchered

12 by the Defendant or caused to be vouchered by him to the bank

13 for -- ostensibly for flooring in the Michigan property when,

14 in fact, the check, after disbursed by the bank, was signed

15 over to one of the private lenders that the bank or that --

16 the hard money lenders that Mr. Hartmann had been doing

17 business with.

18         I'm sorry.  It's The Business Bank, not The Private

19 Bank.

20         THE COURT:  Uh-huh, yeah.

21         MR. CROWE:  I apologize.  It's The Business Bank in

22 Count III, and that is an FDIC-insured institution.  I'm

23 sorry, Your Honor, for confusing the record in that regard.

24         The -- the stipulation goes on to say that the

25 Defendant was in a situation, certainly, at that time in his

1  business, where he needed a constant source of funds that he

2  obtained from either private lenders, hard money lenders, or

3  banks that he used to pay off old lenders and other financial

4  institutions, so he was having trouble, obviously, keeping up

5  with the rehab properties.

6          As to Count VIII in the indictment, that deals with a

7  property in St. Charles.  The address is 1006 Jefferson

8  Street.  A woman with the initials we've identified in the

9  stipulation of N.K.A. owned that house.  She was having

10  trouble making her payments.  She had about $56,000 in debts

11  against the house, mortgages against the house.  In a sale, in

12  a rent-to-own agreement, the Defendant offered to purchase the

13  house from her, and in that transaction, he also obtained a

14  bank loan for some $100,000 against the property.  That was

15  the rough fair market value of the house.  In the closing of

16  that transaction, the Defendant, although the buyer in that

17  situation, ended up receiving some $44,000 which represented,

18  essentially, the equity out of the house, leaving the property

19  with $100,000 loan against it.  Meanwhile, N.K.A., the woman,

20  was making monthly payments to him in the amount of $1,108,

21  ostensibly for her rent and an opportunity to gain the house

22  back.  As things went on, the Defendant failed to continue

23  making the mortgage payments to the bank in that situation,

24  and ultimately, N.K.A. lost her house, it was foreclosed on,

25  and, of course, she lost the equity in it as well.

1   And the parties have agreed that the loss for

2  sentencing purposes is over 200,000, not less than 400,000,

3  and that the Defendant acted with the intent to defraud in

4  executing the scheme described in the stipulation.

5   THE COURT:  Just to clarify for the record as to the

6  loss, you said not less than 200,000 and not less than

7  400,000, but did you mean not more than 400,000?

8   MR. CROWE:  Not more than 400,000, yes, Your Honor.

9   THE COURT:  All right.

10   MR. CROWE:  And that is the Government's position.

11  The Defendant's position is they want to keep the amount of

12  loss issue open for sentencing purposes.

13  Q   (By The Court) All right.  Mr. Hartmann, did you hear all

14  those facts as stated by Mr. Crowe regarding Count III?

15  A   Yes, sir.

16  Q   And are all of those facts true and correct?

17   THE DEFENDANT:  Can I talk to Mr. Shostak for a

18  second, please?

19   THE COURT:  Go ahead.

20  A   Yes, sir.

21  Q   (By The Court) All right.  Do you then agree and admit

22  that you knowingly participated in a scheme to defraud a bank

23  of money and to obtain money and property of the bank by means

24  of material falsehoods?

25  A   Yes, sir.

1  Q    Do you also agree and admit that you did so with the

2  intent to defraud?

3  A    Yes, sir.

4  Q    And do you likewise agree and admit that the bank is a

5  financial institution which is an insured depository under the

6  Federal Deposit Insurance Act?

7  A    Yes, sir.

8  Q    How do you plead regarding Count III?

9  A    Guilty.

10  Q    And with regard to Count VIII, are all of those facts as

11  stated by Mr. Crowe true and correct?

12  A    Yes, sir.

13  Q    Do you then agree and admit that you voluntarily and

14  intentionally devised a scheme to defraud and to obtain money

15  and property by false pretenses?

16  A    Yes, sir.

17  Q    Do you also agree that as part of the scheme you made

18  material misrepresentations of fact?

19  A    Yes, sir.

20  Q    Do you likewise agree that you acted with the intent to

21  defraud?

22  A    Yes, sir.

23  Q    And do you also agree that it was reasonably foreseeable

24  that the mails would be used?

25  A    Yes, sir.

1   Q    And, finally, do you agree and admit that the mails were

2   used in furtherance of some essential step of the scheme?

3   A    Yes, sir.

4   Q    How do you plead regarding Count VIII?

5   A    Guilty.

6        THE COURT:  Do you know of any reason, legal or

7   otherwise, Mr. Shostak, why I should not accept your client's

8   plea of guilty?

9        MR. BURTON SHOSTAK:  No, sir.

10       THE COURT:  Mr. Crowe?

11       MR. CROWE:  No, sir.

12  Q    (By The Court) And, Mr. Hartmann, considering everything

13  we've talked about this afternoon, is it still your desire to

14  have me accept your plea of guilty and enter my judgment

15  finding you guilty beyond a reasonable doubt?

16  A    Yes, sir.

17       THE COURT:  Let the record then reflect that the

18  Court will enter its order and findings that the Defendant is

19  entering his pleas of guilty regarding Counts III and VIII

20  knowingly, voluntarily, and of his own free will with the full

21  understanding of the nature and consequences of each plea of

22  guilty and, furthermore, that he is knowingly and voluntarily

23  waiving his right to a trial by jury and all rights incidents

24  thereto as they relate to Counts III and VIII and,

25  furthermore, that the Defendant is fully cognizant of the

1  range of punishment applicable to Count III and, likewise,

2  aware of the punishment applicable to Count VIII.  The Court,

3  therefore, accepts the Defendant's plea of guilty to Count III

4  and to Count VIII and enters its order finding the Defendant

5  guilty beyond a reasonable doubt as to each Count III and

6  VIII.

7           A Presentence Investigation Report will be ordered,

8  and sentencing will be set for June the 23rd at 11:15 a.m.

9           Anything further, Mr. Shostak?

10          MR. BURTON SHOSTAK:  No, sir.

11          THE COURT:  Bond?

12          MR. BURTON SHOSTAK:  I'd like him on bond.

13          MR. CROWE:  No objection to the Defendant continuing

14  on bond, Judge.

15          THE COURT:  All right.  Defendant will remain on bond

16  pending sentencing, and the conditions currently in effect

17  regarding bond will remain as such.  We'll see you back on the

18  23rd at 11:15 in the morning, Mr. Hartmann.

19          THE DEFENDANT:  Thank you, Your Honor.

20          MR. BURTON SHOSTAK:  Thank you, Your Honor.

21          THE COURT:  Thank you, gentlemen.  That will conclude

22  this matter, and we will be in recess until 2:00.

23      (Proceedings concluded at 1:31 p.m.)

24

25

# CERTIFICATE

I, Gayle D. Madden, Registered Diplomate Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 20 inclusive.

Dated at St. Louis, Missouri, this 26th day of June, 2009.


_____

/s/ Gayle D. Madden

GAYLE D. MADDEN, CSR, RDR, CRR

Official Court Reporter